**RIZIO LIPINSKY HEITING, P.C.**
DAREN H. LIPINSKY, State Bar No. 190955
GREGORY G. RIZIO, State Bar No. 157008
5811 Pine Avenue, Suite A
Chino Hills, CA 91809
Telephone: (909) 885-8090
Facsimile: (909) 597-6199

**AEGIS LAW FIRM, PC**
SAMUEL A. WONG, State Bar No. 217104
ALI S. CARLSEN, State Bar No. 289964
9811 Irvine Center Drive, Suite 100
Irvine, California 92618
Telephone: (949) 379-6250
Facsimile: (949) 379-6251

Attorneys for Plaintiff, WILLIAM KATAFIAS

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM KATAFIAS, an individual,<br><br>   Plaintiff,<br><br>  vs.<br><br>BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM; OFFICE OF THE COMPTROLLER OF THE CURRENCY; FEDERAL DEPOSIT INSURANCE CORPORATION,<br><br>   Defendants. | CASE NO.:<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**ADMINISTRATIVE PROCEDURE ACT CASE** |

-1-

**COMPLAINT**

## INTRODUCTION

1.     Plaintiff William Katafias ("Plaintiff" or "Mr. Katafias") seeks declaratory and injunctive relief against three banking agencies, the Board of Governors of the Federal Reserve System ("FRB"), the Office of the Comptroller of the Currency ("OCC"), and the Federal Deposit Insurance Corporation ("FDIC"), for unlawfully withholding and delaying agency action.

2.     Mr. Katafias is entitled to enforce an arbitration award in his favor against his former employer, Wells Fargo & Company, Wells Fargo Bank, N.A., and The Wells Fargo & Company Salary Continuation Pay Plan (collectively, "Wells Fargo"). The Arbitrator found that Wells Fargo eliminated Mr. Katafias' position as part of the restructuring of its auto business and refused to comply with Mr. Katafias' restricted share rights award agreements. As a result, the Arbitrator awarded Mr. Katafias $3,230,651.70 plus $467,420.00 in attorneys' fees and $40,168.85 in costs.

3.     However, Wells Fargo claimed an inability to comply with the arbitration award due to its troubled bank status. Specifically, Wells Fargo argued that the arbitration award constituted a "golden parachute" that required the banking agencies' approval.

4.     Therefore, in August and December 2020, Mr. Katafias submitted applications requesting permission for Wells Fargo to pay the arbitration award to the three banking agencies. Despite several follow-up letters, none of the banking agencies have issued a decision on Mr. Katafias' applications, nor requested any additional information from Mr. Katafias, nor provided an explanation for the unreasonable three-year delay in issuing a decision.

5.     Accordingly, Mr. Katafias seeks a judgment that compels the banking agencies to take action that has been unlawfully withheld and unreasonably delayed.

///

///

**COMPLAINT**

**JURISDICTION AND VENUE**

6.     This Court has federal question jurisdiction under 28 U.S.C. § 1331. This action arises under federal laws, including the Administrative Procedures Act, 5 U.S.C. § 702, the Federal Deposit Insurance Act, 12 U.S.C. § 1828, and the Declaratory Judgment Act, 28 U.S.C. § 2201. Further, the statute establishing the powers and authority of the FDIC provides that "all suits of a civil nature at common law or in equity to which the [FDIC], in any capacity, is a party shall be deemed to arise under the laws of the United States." 12 U.S.C. § 1819(b)(2)(A).

7.     Venue is proper in this District under 28 U.S.C. § 1391(e), which provides that a civil action against an agency of the United States government may be brought "in any judicial district in which . . . the plaintiff resides if no real property is involved in the action." Mr. Katafias resides in Orange County, California and no real property is involved here.

**THE PARTIES**

8.     Mr. Katafias worked for Wells Fargo and its predecessor entities for approximately 24 years. Following the elimination of his position, Mr. Katafias sought and was denied severance benefits pursuant to Wells Fargo's Salary Continuation Pay Plan, and initiated arbitration against Wells Fargo for wrongful termination, breach of contract, and failure to pay benefits under 29 U.S.C. § 1132(a)(1)(b). The Arbitrator awarded Mr. Katafias $3,230,651.70 in compensatory damages, plus $467,420.00 in attorneys' fees and $40,168.85 in costs.

9.     Mr. Katafias has a real and protectable interest in pursuing the enforceability of the arbitration award he obtained. He has suffered a concrete and particularized injury that cannot be redressed by a decision from the banking agencies. Upon information and belief, Wells Fargo is holding the money to satisfy the arbitration award, and the sole barrier is regulatory approval which has been unreasonably delayed.

**COMPLAINT**

10.     The FRB is an agency of the United States government, with its principal office in Washington, D.C. The FRB is the central bank of the United States and is responsible for regulating and supervising certain banking institutions. *See* 12 U.S.C. § 248.

11.     The OCC is an agency of the United States government, with its principal place of business in Washington, D.C. The OCC is an independent bureau of the Department of the Treasury and is responsible for regulating and supervising certain banking institutions. *See* 12 U.S.C. § 1.

12.     The FDIC is an agency of the United States government, with its principal place of business in Washington, D.C. The FDIC administers the Federal Deposit Insurance Act, 12 U.S.C. § 1828, promulgated the accompanying "golden parachute" regulations, C.F.R. Part 359, and interpretative guidance at issue in this litigation.

**GENERAL ALLEGATIONS**

**The Arbitration and Award Against Wells Fargo**

13.     Mr. Katafias worked for Wells Fargo and its predecessor entities for approximately 24 years. Until his position was eliminated on February 1, 2017, he served as the National Production Manager. In this role, Mr. Katafias oversaw 57 regional business centers that performed sales, credit, collections, and funding. Throughout his employment with Wells Fargo, Mr. Katafias received exceptional performance reviews and consistently exceeded all key objectives set forth by Wells Fargo and its affiliates.

14.     At the time of his termination, Mr. Katafias had never been written up or given any corrective action. He was in fact deemed so valuable to Wells Fargo that he was awarded restricted share rights designed "[t]o encourage [his] continued employment with [Wells Fargo] and to motivate [him] to help the Company increase stockholder value over the long term . . ." Each of the restricted share rights

-4-

**COMPLAINT**

agreements provided that the share would vest according to a set schedule, subject to four limited exceptions: (a) shares would vest immediately rather than according to the schedule if Mr. Katafias died; (b) shares would vest immediately rather than according to the schedule if Mr. Katafias incurred an involuntary termination without cause and received a lump sum severance benefit, such as Salary Continuation under Wells Fargo's ERISA Plan; (c) shares would vest immediately rather than according to the schedule if Wells Fargo was purchased by another company and Mr. Katafias did not wish to continue his employment under the successor company; or (d) shares would immediately terminate if Mr. Katafias voluntarily resigned.

15.    In February 2018, Wells Fargo moved to centralize its automotive business model, closed its regional business centers, and eliminated Mr. Katafias' position. But Wells Fargo denied eliminating his position, and as a result denied Mr. Katafias' claim for benefits under its Salary Continuation Pay Plan and refused to vest Mr. Katafias' shares pursuant to his restricted share rights agreements.

16.    Accordingly, Mr. Katafias initiated arbitration against Wells Fargo for: (1) wrongful termination; (2) retaliation in violation of Labor Code § 1102.5; (3) breach of contract; (4) breach of the covenant of good faith and fair dealing; (5) promissory estoppel; (6) claim for benefits due under 29 U.S.C. § 1132(a)(1)(b); and (7) failure to pay wages due upon termination.

17.    The parties chose Hon. Thomas P. Nugent (Ret.) to serve as Arbitrator who would fully and finally adjudicate the matter to its binding conclusion. After receiving thousands of documents of evidence and dozens of witness' testimony, the Arbitrator specifically found that Mr. Katafias was not terminated for cause. Instead, his position had been eliminated.

18.    The Arbitrator also found that Wells Fargo was attempting to reduce its own exposure by falsely claiming it terminated him for undocumented and vague "poor performance." Specifically, high-ranking officials in Wells Fargo believed that

in "exiting" Mr. Katafias, consideration should be given to "his level or compensation, his years of experience, and ultimately the presence of these unrestricted stock awards, including the retention agreement." The Arbitrator found that Wells Fargo did not acknowledge it eliminated Mr. Katafias' position because it did not believe it would be able to achieve regulatory approval in the time frame needed to restructure its automotive division in response to regulatory concerns.

19.　　The Arbitrator awarded Mr. Katafias $3,230,651.70, as follows:

(a) ERISA Statutory Violation Compensatory Damages: $349,000.00

(b) ERISA Statutory Violation Interest: $59,345.00

(c) Breach of Restrictive Share Rights Agreements Compensatory Damages: $2,218,946.72

(d) Breach of Restrictive Share Rights Agreements Interest: $603,359.98

20.　　On May 11, 2020, the Arbitrator issued a supplemental interim award of $467,420.00 in attorneys' fees and $40,168.85 in costs as part of Mr. Katafias' ERISA damages.

21.　　Only after the interim award was issued did Wells Fargo first raise the issue of its ability to satisfy any judgment due to the restrictions imposed on it as a result of its troubled bank status.

### Wells Fargo's Troubled Bank Status

22.　　In September 2016, Wells Fargo was fined $185 million for secretly creating millions of unauthorized bank and credit accounts without consumers' knowledge. In June 2017, Wells Fargo was sued for modifying mortgages without authorization from consumers. The next month, Wells Fargo admitted that it charged consumers for automobile insurance they did not need.

23.　　On November 18, 2016, the OCC made Wells Fargo subject to 12 C.F.R. § 359's limitations on golden parachute payments.

**COMPLAINT**

24.     Generally, a "golden parachute" is a payment to an employee that is contingent on the termination of employment and is received when the bank making the payment is troubled. 12 U.S.C. § 1828(k).

**Mr. Katafias' 2020 Application to Permit Wells Fargo to Pay the Arbitration Award**

25.     On August 10, 2020, Mr. Katafias submitted an application for approval of payment of the arbitration award to the FDIC and the OCC.

26.     On November 13, 2020, Mr. Katafias requested confirmation from the FDIC and the OCC that his application was received.

27.     On December 10, 2020, the FDIC confirmed that it was in the process of reviewing Mr. Katafias' application and would contact him if any additional information was necessary. The FDIC also noted that Mr. Katafias' application needed to be submitted to the FRB.

28.     Accordingly, Mr. Katafias submitted his application for approval of payment of the arbitration award to the FRB on December 17, 2020.

29.     On December 18, 2020, the OCC confirmed that it was in the process of reviewing Mr. Katafias' application.

30.     To date, the FRB has not confirmed receipt of Mr. Katafias' application. To date, none of the banking agencies has ever requested more information from Mr. Katafias in reviewing his application.

31.     On May 15, 2023, Mr. Katafias sent a follow up letter to the FRB, the OCC, and the FDIC asking to be advised of the status of his application. To date, no response from any of the banking agencies has been received.

32.     Recognizing that "excessive delay saps the public confidence in any agency's ability to discharge its responsibilities and creates uncertainty for the parties, who must incorporate the potential effect of possible agency decision-making into future plans," *Potomac Electric Power Co. v. ICC*, 702 F.2d 1026, 1034 (D.C.

-7-
**COMPLAINT**

Cir. 1983), the APA requires courts "to compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

## FIRST CAUSE OF ACTION

### VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

(Unlawfully Withholding or Unreasonably Delaying Agency Action in Violation of 5 U.S.C. §§ 702, 706(1))

33.   Plaintiff re-alleges and incorporates by reference all paragraphs above as though fully set forth herein.

34.   Pursuant to the Federal Deposit Insurance Act, 12 U.S.C. § 1828(k), the FDIC is charged with regulatory authority over "golden parachute" payments. Specifically, a covered entity cannot make such payments without prior supervisory approval from the appropriate federal banking agency—in this case, the FRB and OCC—and the written concurrence of the FDIC. *See* 12 C.F.R. § 359.4(a)(1).

35.   Congress did not specifically prescribe a timeline for approval or denial of a proposed payment, but agencies must act "within a reasonable time." 5 U.S.C. § 555(b). Further, the FDIC is required to "provide the applicant with a subsequent written notification of the final action taken as soon as the decision is rendered." 12 C.F.R. § 303.244. This Court is authorized to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

36.   On August 10, 2018 and December 17, 2020, Plaintiff submitted to the banking agencies applications for approval of payment of the arbitration award. Plaintiff had provided all of the necessary information required by law and received no requests for additional information from any of the agencies.

37.   More than four years after Plaintiff submitted the payment applications, the FRB, the OCC, and the FDIC have yet to approve or deny the application and have failed to articulate any basis for their failure to act.

**COMPLAINT**

38.     The FRB, the OCC, and the FDIC's failure to make a determination on Plaintiff's payment application constitutes agency action unlawfully withheld or unreasonably delayed in violation of 5 U.S.C. § 706(1).

39.     Therefore, Plaintiff is entitled to relief pursuant to 5 U.S.C. §§ 702, 706(1), including declaratory relief that the FRB, the OCC, and the FDIC have unreasonably delayed and unlawfully withheld appropriate agency action concerning Plaintiff's application, as well as the issuance of an injunction compelling the FRB, the OCC, and the FDIC to render an appropriate decision without further delay.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for and order and judgment as follows:

1.     Declaring that the FRB, the OCC, and the FDIC have unreasonably delayed in rendering a decision concerning Plaintiff's application and did so unlawfully;

2.     Issuing an injunction compelling the FRB, the OCC, and the FDIC to take action promptly with respect to Plaintiff's application by either confirming that the arbitration award may be paid or stating the purported basis for disapproving the payment;

3.     Awarding Plaintiff reasonable costs, including attorneys' fees, incurred in bringing this action pursuant to 28 U.S.C. § 2412; and

4.     For any other and further relief as the Court deems just and proper.

Dated:  March 13, 2025

**RIZIO LIPINSKY HEITING, P.C.**

DAREN H. LIPINSKY
Attorney for Plaintiff,
WILLIAM KATAFIAS

**COMPLAINT**